UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTIN DAVIS,                                    )          NO. EDCV 09-1391-CT
                                                 )
            Plaintiff,                           )          OPINION AND ORDER
                                                 )
      v.                                         )
                                                 )
MICHAEL J. ASTRUE,                               )
Commissioner of                                  )
Social Security,                                 )
                                                 )
                                                 )
            Defendant.                           )
_____)

      For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.

                            SUMMARY OF PROCEEDINGS

      On July 30, 2009, plaintiff, ("plaintiff"), filed a complaint
seeking judicial review of the denial of benefits by the Commissioner
pursuant to the Social Security Act ("the Act").  The parties consented
to proceed before the magistrate judge.  On November 6, 2009, plaintiff
filed a brief with points and authorities in support of reversal or
remand.  On December 2, 2009, the Commissioner filed a brief with points

and authorities in opposition.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On May 31, 2007, plaintiff filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability since March 30, 2003, due to a broken back, rods in bad and neck, severe brain injury, anger issues, deafness in left ear, vision problems, mental health issues, broken hip, broken pelvis, broken kneecaps, wrist and finger problems.  (See TR 94-96, 97-98, 111.)[1]  The medical evidence of record shows that plaintiff sustained these injuries on October 23, 2003, when he fell 30 feet down a cliff related to consumption of alcohol and marijuana.  At his November 7, 2003 follow up appointment, the doctor noted that plaintiff walked with no assistive device. (See TR 35, 201-66, 275.) Plaintiff sought follow up treatment for his physical injuries only sporadically in 2004, 2005, and 2006. (See TR 35, 201-66, 267-86, 375, 399-411.)

His applications were denied initially and upon reconsideration. (TR 61-65, 69-73.)[2]

On August 20, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ.   (TR 4-20.) The ALJ also considered

--------

[1]    "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

[2]    According to the hearing decision at issue here, plaintiff filed prior SSI and DIB applications on October 30, 2003, with an alleged onset date of October 23, 2003, which were denied at the initial level on January 5, 2004, and at the reconsideration level on September 7, 2004.  (TR 32.)   Those prior denials are not at issue here.

vocational expert ("VE") testimony (TR 23-24), and the testimony of D.P.,[3] a friend and neighbor of plaintiff, (TR 20-23).

On September 8, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he retains the ability to do a limited range of light level work, and that he thus was not eligible for benefits. (TR 32-39.)[4] Here, petitioner does not challenge the residual functional capacity ("RFC") assessment with respect to his physical limitations, except to the narrow extent he contends the ALJ omitted limitations on reaching opined in 2009, after the decision was issued. The gravamen of his challenge to the ALJ's decision is whether the ALJ properly evaluated petitioner's mental functional limitations.

On October 13, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 92.)

On May 21, 2009, the Appeals Council denied the request with respect to plaintiff's DIB claim, granted the request with respect to plaintiff's SSI claim, and remanded the SSI claim to the ALJ for further consideration in association with a new SSI claim.[5] (TR 54-59.) Thus, the ALJ's decision stands as the final decision of the Commissioner with respect to plaintiff's DIB claim.

Plaintiff subsequently sought judicial review in this court. Petitioner's SSI claim is still under consideration by the Commissioner

---

[3]  This court refers to lay witnesses by first and last initial.

[4]  A second, identical copy of the ALJ's order appears in the transcript of record at 43-53.

[5]  A copy of the Appeals Council's orders are attached as exhibit 1 to this opinion and order.

3

1  and, consequently, this appeal is limited to consideration of
2  plaintiff's DIB claim.   The question here, then, is not whether
3  plaintiff is currently disabled, but only whether he became disabled
4  prior to the expiration of his DIB insured status on March 31, 2006.
5  (See TR 32.)

6          2.   Summary Of The Evidence

7      The ALJ's decision is attached as exhibit 2 to this opinion and
8  order and materially summarizes the evidence in the case.

9                   PLAINTIFF'S CONTENTIONS

10      Plaintiff essentially contends the ALJ failed to:

11  1.   Consider the opinion of Frank Cunningham, M.D., consultative
12       examiner;

13  2.   Consider the opinion of Jeffrey D. Litzinger, consultative
14       examiner;

15  3.   Consider a State Agency's physician's opinion;

16  4.   Properly consider the plaintiff's residual functional capacity;

17  5.   Properly consider the lay witness's statements;

18  6.   Pose a complete hypothetical question to the VE.

19                   STANDARD OF REVIEW

20      Under 42 U.S.C. §405(g), this court reviews the Commissioner's
21  decision to determine if: (1) the Commissioner's findings are supported
22  by substantial evidence; and, (2) the Commissioner used proper legal
23  standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).
24  Substantial evidence means "more than a mere scintilla," Richardson v.
25  Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.
26  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

27      When the evidence can reasonably support either affirming or

28                             4

reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.  <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).   The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).

DISCUSSION

1.   <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed

5

impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.   Issues

A.   Consultative examiners and state agency physician

(Issues 1 - 3)

Plaintiff first claims the ALJ erred because he "ignored" or "failed to consider" the opinions of two consultative examiners, Frank Cunningham, M.D., and Jeffrey D. Litzinger, M.D., who examined plaintiff consultatively on January 5, 2009 and January 8, 2009, respectively, (TR 777-83, 787-92), and the report of a state agency reviewing physician, M. Tahmassian, M.D., which was completed on March 2, 2009 (TR 811) (hereafter the "2009 reports").

The ALJ issued his decision on September 8, 2008, (TR 32-53), and plaintiff sought appeals council review on October 13, 2008 (TR 92-93), i.e., before the 2009 reports were issued.  Consequently, the ALJ could not disregard those reports, as plaintiff suggests.  Moreover, according to the record before this court, plaintiff did not seek to introduce the 2009 reports to the Appeals Council in conjunction with his request for review, and the Appeals Council did not consider them in that regard.[6]

---

[6]  On this basis, the court would also be without authority to consider the 2009 reports, because they are not properly part

(E.g., TR 54-59, 92.)

Accordingly, there is no material legal error here. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (plaintiff who alleges disability based on subjective symptoms must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged).[7]

_____

of the administrative record. See 42 U.S.C. §§ 405(g) (district court has power to enter judgment "upon the pleadings and transcript of the record"; the transcript includes "the evidence upon which the findings and decision complained of are based"); see also 42 U.S.C. § 1383(c)(3)(2002); Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (court has authority to review evidence presented to the Appeals Council after hearing and that it reviews).  Indeed, several portions of the transcript of record presented to this court relate only to petitioner's now pending administrative application for SSI benefits, and not to the DIB claim at issue here or the medical evidence presented to the ALJ prior to the issuance of the September 8, 2008 decision. (See, e.g., TR 148-49, 160-189, 770-836.)

[7]  To the extent plaintiff intends to suggest remand is appropriate for consideration of the 2009 reports as "new" and material evidence, the court is unpersuaded. See 42 U.S.C. 405(g) (remand appropriate only if evidence new, material and probative regarding prior alleged impairments and when plaintiff establishes "good cause" for failing to produce evidence earlier).  The record does not suggest good cause for plaintiff's failure to obtain such reports previously.  See Mayes v. Massanari, 276 F.3d 453, 462-63 (9th Cir. 2001) ("[a] [plaintiff] does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied").  Nor does the court find the reports would be material or probative with regard to impairments and limitations previously presented to the Commissioner and at issue here. See id.; see also Sanchez v. Secy of Health & Human Servs., 812 F.2d 509, 512 (9th Cir.1987) (plaintiff lacked good cause for remand for consideration of two psychological examinations prepared after hearing when attorney knew of plaintiff's memory loss but failed to explain why the plaintiff had not requested a mental evaluation or pressed his mental impairment claim at the hearing before the ALJ).

1       B.   RFC Assessment and VE hypothetical (Issues 4, 6)

2       Plaintiff next contends the ALJ's RFC assessment and VE

3  hypothetical (which mirrors the RFC) are not supported by substantial

4  evidence because they omit: (1) the limitations opined in the 2009

5  reports; and, (2) mental functioning limitations opined by consultative

6  examining psychiatrist Mark D. Pierce, M.D., in 2007. (See TR 287-92.)

7       To the extent plaintiff contends the RFC and hypothetical are

8  materially in error due to the "omission" of limitations opined in the

9  2009 reports, the court disagrees for the same reasons set forth above.

10  See Bunnell v. Sullivan, 947 F.2d at 345.

11      To the extent plaintiff contends the RFC and hypothetical are

12  materially in error because they omit limitations opined by Dr. Pierce

13  in 2007 respecting plaintiff's mental functioning, the court likewise

14  disagrees.  The burden is on plaintiff to establish that the onset of

15  his disability occurred prior to the expiration of insured status under

16  the Act.   Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

17  Although medical evaluations made after expiration of plaintiff's

18  insured status may be relevant to help evaluate the existence of a

19  pre-expiration condition, Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.

20  1988), after-the-fact psychiatric diagnoses are notoriously unreliable,

21  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citing Schauer

22  v. Schweiker, 675 F.2d 55, 60 n.5 (2d Cir. 1982).  Diagnoses with

23  respect to mental impairments are significantly less reliable, it has

24  been found, than after-the-fact diagnoses of *physical* conditions.  See

25  Schauer v. Schweiker, 675 F.2d at 60 n.5.

26      Here, the Appeals Council declined to remand plaintiff's DIB claim

27  on this issue because, while it found Dr. Pierce's report suggested

28
                                    8

plaintiff had greater mental limitations in 2007 than the ALJ ultimately included in the RFC assessment, it also found that Dr. Pierce's report is irrelevant to plaintiff's DIB claim because does not relate to the period on or before March 31, 2006, the date plaintiff last met the special disability insured status requirements of the Act. (TR 58.) Based upon a review of the record, the court concludes the Appeals Council's reasoning finds the support of substantial evidence in the record.

Although plaintiff contends he had issues with his temper and mood since his 2003 accident (e.g., TR 12), as the ALJ found, there is no contemporaneous objective medical evidence supporting such a claim, or, indeed, any objective medical finding suggesting he was operating under mental impairments prior to the expiration of his insured status. (See TR 37.) In fact, as the ALJ suggested, the evidence appears to be to the contrary. The ALJ noted no evidence of mental retardation in plaintiff's youth. Plaintiff testified he was not in special education classes in school. (TR 15-17.) There was no medical evidence of dysfunction of the brain from an October 2003 accident that resulted in several of the physical impairments complained of, and plaintiff did not receive any mental health work up until 2007. Plaintiff did not, at any point, receive ongoing mental health treatment or substance abuse treatment. (TR 37.) Indeed, as the ALJ also appears to have found, to the extent Dr. Pierce's tests suggested plaintiff was operating under mental functioning limitations greater than those included in the RFC, those findings did not have significant weight because the evidence shows plaintiff put forth poor effort in his mental and physical examinations, and there were multiple examples in the record of

1  instances in which plaintiff embellished his symptoms.  (E.g., TR 38,

2  289-92).

3      Furthermore, irrespective of Dr. Pierce's findings, there is

4  abundant evidence suggesting drug and alcohol and drug abuse since

5  plaintiff's high school years.  (E.g., TR 288.)  By his own admission,

6  plaintiff uses "street" Vicodin.  He also testified that he did not

7  enter a detox program until August 2008 (TR 15-16), more than two years

8  after his period of disability insurance expired, despite repeated

9  referrals by his doctors, (e.g., TR 268-69, 375).  (TR 38.)  Plaintiff

10  cannot be considered disabled if alcoholism or drug addiction is a

11  "contributing factor" material to the Commissioner's determination that

12  plaintiff is disabled, see 42 U.S.C. § 423(d)(2)(C), or if he has

13  refused treatment that could control or ameliorate his condition, see 20

14  C.F.R. § 404.1530.

15      There is no material legal error here.

16          C.   Lay Witness Testimony (Issue 5)

17      Finally, plaintiff contends the ALJ did not articulate legally

18  sufficient reasons for discounting the testimony and third-party

19  function report submitted by D.P., a friend and neighbor of plaintiff.

20      As plaintiff correctly points out, "descriptions by friends and

21  family members in a position to observe [plaintiff's] symptoms and daily

22  activities have routinely been treated as competent evidence." Sprague

23  v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  Accordingly, lay

24  testimony "as to a [plaintiff's] symptoms or how an impairment affects

25  ability to work . . . cannot be disregarded without comment." Stout v.

26  Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations

27  omitted).  Rather, "[i]f the ALJ wishes to discount the testimony of the

28

lay witness, he must give reasons that are germane to [that] witness for doing so." Id. (citations omitted).

Reasons that are germane to a particular witness may include, for example, that the witness's testimony is contradicted by the medical evidence of record or plaintiff's statements, Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005), or that the witness has made contradictory or inconsistent statements, e.g., Lewis v. Apfel, 236 F.3d 503, 512 (9th cir. 2001).

Plaintiff points out that, at the hearing and in her third-party function report, D.P. stated that plaintiff:

- often sleeps poorly due to pain;
- is limited in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs;
- can only walk for one block before he must rest;
- has a temper, does not get along well with others, and is paranoid;
- does not take orders well;
- does not handle stress or changes in his routine well;
- does not always understand or remember, and has a short attention span;
- can follow only simple instructions.

(TR 20-22, 168-69, 172-74.)

The RFC is largely consistent with these statements.[8]  (See TR 34.)

_____

[8]  The RFC assessment concludes plaintiff retains the ability to: Lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours in an 8-hour work day, sit 6 hours in an 8-hour workday, only to occasionally climb, balance, stoop, kneel, crouch, crawl, and that plaintiff is mildly to moderately limited in his ability to understand and remember tasks, sustain concentration and persistence, to socially

1  To the extent D.P.'s statements indicate plaintiff is more severely
2  limited than the RFC finding, however, the ALJ concluded her statements
3  are not credible because they are inconsistent with: the objective
4  findings, plaintiff's testimony regarding his daily activities, and the
5  general lack of credibility of his subjective complaints, all of which
6  were discussed throughout the decision.  (TR 38.)  The ALJ also noted
7  that after his accident, plaintiff received very little treatment, only
8  conservative treatment was advised, and there are large gaps in
9  plaintiff's treatment records (TR 35-38, 201-86.)   See Burch v.
10 Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (evidence of conservative
11 treatment or a lack of treatment is sufficient to discredit testimony
12 regarding severity of impairments).

13      These reasons are germane to D.P.  Furthermore, the court has
14 reviewed the decision and the administrative record, and concludes that
15 these reasons are based on substantial evidence of record and are
16 sufficiently specific to allow this court to evaluate whether
17 substantial evidence supported the ALJ's finding.  See Lewin v.
18 Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981) (an ALJ must make full
19 and detailed findings of fact which are essential to the ALJ's
20 conclusion so that a reviewing court may determine the basis for the
21 decision and whether substantial evidence supports the Commissioner's
22 decision).

23      There is no material legal error here.

24                          CONCLUSION

25      If the evidence can reasonably support either affirming or
26 _____
27 interact with the general public, and to adapt to workplace
   changes.  (TR 34.)
28
                              12

1 | reversing the Commissioner's conclusion, the court may not substitute

2 | its judgment for that of the Commissioner.   <u>Flaten v. Secretary of</u>

3 | <u>Health and Human Services</u>, 44 F.3d at 1457.

4 | After careful consideration of the record as a whole, the

5 | magistrate judge concludes that the Commissioner's decision is supported

6 | by substantial evidence and is free from material legal error.

7 | Accordingly, it is ordered that judgment be entered in favor of the

8 | Commissioner.

9 | DATED: December 11, 2009

10 |

CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

13



SOCIAL SECURITY ADMINISTRATION

EXHIBIT NO. 7A
PAGE: 1 OF 3

**Refer to: TLC**
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

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (703) 605-8000
Date:
MAY 2 1 2009

## NOTICE OF APPEALS COUNCIL ACTION

Mr. Martin Vincent Davis
1560 W Avenue H10
Lancaster, CA 93534

This is about your request for review of the Administrative Law Judge's decision dated
September 8, 2008.

### We Are Taking Separate Actions On Your Claims

This letter is only about your claim for a period of disability and disability insurance benefits.
We will send you a separate letter about your claim for supplemental security income,
because the issue raised in connection with that claim relates to the period after March 31,
2006, the date you last met the special disability insured status requirements of the Act.

### We Have Denied Your Request for Review

We found no reason under our rules to review the Administrative Law Judge's decision.
Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the
Commissioner of Social Security in your case.

### Rules We Applied

We applied the laws, regulations and rulings in effect as of the date we took this action.

Under our rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We receive new and material evidence and the decision is contrary to the weight of all the



CLAIM FILE

54

Martin.Vincent Davis (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)                                  Page 2 of 3

evidence now in the record.

**If You Disagree With Our Action**

If you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action.

If you do not ask for court review, the Administrative Law Judge's decision will be a final decision that can be changed only under special rules.

**How to File a Civil Action**

You may file a civil action (ask for court review) by filing a complaint in the United States District Court for the judicial district in which you live. The complaint should name the Commissioner of Social Security as the defendant and should include the Social Security number(s) shown at the top of this letter.

You or your representative must deliver copies of your complaint and of the summons issued by the court to the U.S. Attorney for the judicial district where you file your complaint, as provided in rule 4(i) of the Federal Rules of Civil Procedure.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Social Security Administration's Office of the General Counsel that is responsible for the processing and handling of litigation in the particular judicial district in which the complaint is filed. The names, addresses, and jurisdictional responsibilities of these offices are published in the Federal Register (70 FR 73320, December 9, 2005), and are available on-line at the Social Security Administration's Internet site, http://policy.ssa.gov/poms.nsf/links/0203106020.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Attorney General of the United States, Washington, DC 20530.

**Time To File a Civil Action**

• You have 60 days to file a civil action (ask for court review).

• The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

• If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to ask for court review. You must make the request in writing and give your reason(s) in the request.

You must mail your request for more time to the Appeals Council at the address shown at the top of this notice. Please put the Social Security number(s) also shown at the top of this

Martin Vincent Davis (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)                     Page 3 of 3  **EXHIBIT NO. 7A**
                                                                     **PAGE: 3 OF 3**

notice on your request.  We will send you a letter telling you whether your request for more
time has been granted.

**About The Law**

The right to court review for claims under Title II (Social Security) is provided for in Section
205(g) of the Social Security Act.  This section is also Section 405(g) of Title 42 of the United
States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is
provided for in Section 1631(c)(3) of the Social Security Act.  This section is also Section
1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

**If You Have Any Questions**

If you have any questions, you may call, write, or visit any Social Security office.  If you do
call or visit an office, please have this notice with you.  The telephone number of the local
office that serves your area is (661)940-8534.  Its address is:

> Social Security
> 44451 N 20th St W
> Lancaster, CA 93534-2702

> ORIGINAL SIGNED BY

> Robert M. Goldberg
> Administrative Appeals Judge

cc:  Bill LaTour
     11332 Mountain View Ave
     Suite C
     Loma Linda, CA 92354

 **SOCIAL SECURITY ADMINISTRATION**

EXHIBIT NO. 8A
PAGE: 1 OF 3

**Refer to:** TLCM3
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

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (703) 605-8000
Date:

MAY 2 1 2009

## NOTICE OF ORDER OF APPEALS COUNCIL
## REMANDING CASE TO ADMINISTRATIVE LAW JUDGE

Martin Vincent Davis
1560 W Avenue H10
Lancaster, CA 93534

### What This Order Means

We have sent your case back to an Administrative Law Judge. In the enclosed order, we explain why we did this and what the Administrative Law Judge will do about your claim.

In addition to what we ordered the Administrative Law Judge to do, the Administrative Law Judge may also do anything else needed to complete the claim.

### What Happens Next

An Administrative Law Judge will contact you to tell you what you need to do.

### If You Have Any Questions

If you have any questions, you may call, write, or visit any Social Security office. If you do call or visit an office, please have this notice with you. The telephone number of the local office that serves your area is (661)940-8534. Its address is:

Social Security
44451 N 20th St W
Lancaster, CA 93534-2702

cc:
Bill LaTour
11332 mountain View Ave
Suite C
Loma Linda, CA 92354

RCALJ, San Francisco, CA

57

EXHIBIT NO. 8A
PAGE: 2 OF 3

**SOCIAL SECURITY ADMINISTRATION**
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

**ORDER OF APPEALS COUNCIL**

REMANDING CASE TO ADMINISTRATIVE LAW JUDGE

| In the case of | Claim for |
|---|---|
| Martin Vincent Davis | Supplemental Security Income |
| (Claimant) | |
| | 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 |
| (Wage Earner) (Leave Blank if same as above) | (Social Security Number) |

The Administrative Law Judge issued a decision on September 8, 2008. The claimant has asked the Appeals Council to review this decision. A separate action is being taken on the claim for a Period of Disability and Disability Insurance Benefits, because the issue set forth below does not relate to the period on and before March 31, 2006, the date the claimant last met the special disability insured status requirements of the Act.

The Appeals Council grants the request for review under the error of law provision of the Social Security Administration regulations (20 CFR 416.1470). Under the authority of 20 CFR 416.1477, the Appeals Council vacates the hearing decision with respect to the Title XVI claim and remands this case for further proceedings.

The Administrative Law Judge found, in relevant part, that the claimant's mental impairments impose mild to moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, socially interacting with the general public and adapting to workplace changes (finding 5). However, the decision sets forth some of the limitations propounded in the consultative psychological report dated June 26, 2007 (page 4 ¶ 2, referring to exhibit 3F) and appears to have given weight to the opinions in this report (page 6 ¶ 3). However, the Appeals Council notes that the opinions set forth in this report are significantly more limiting than the residual functional capacity found by the Administrative Law Judge. Specifically, Dr. Mark Pierce, Ph.D., opined that "by today's performance" the claimant is capable of simple and repetitive tasks and to adapt to minimal changes in the work environment, with moderate to greater difficulty working effectively with others, and he is able to remember and comply with simple one and two part instructions (exhibit 3F/5-6). An audit of the hearing recording reveals that the vocational expert was not asked to consider these limitations and restrictions. Thus, in the event these opinions are accepted, there is insufficient information to ascertain whether these limitations and restrictions would impact on the jobs cited.

See Next Page

**58**

Martin Vincent Davis (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)                                    Page 2 of 2

. Upon remand the Administrative Law Judge will:

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinions pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments  (20 CFR 416.912).

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c).

- Depending on the limitations and/or restrictions ultimately found, determine whether further evidence from a vocational expert is needed.

The claimant filed a subsequent claim for Title XVI benefits on October 24, 2008. The Appeals Council's action with respect to the current claims renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will associate the claim files and issue a new decision on the associated claims.

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

APPEALS COUNCIL

Robert M. Goldberg
Administrative Appeals Judge

Patricia A. Jonas
Administrative Appeals Judge

Date:            MAY 2 1 2009

**59**

EXHIBIT NO. 5A
PAGE: 3 OF 10

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |
| | Period of Disability, Disability Insurance Benefits, and |
| | Supplemental Security Income |
| Martin Vincent Davis | |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On May 31, 2007, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on May 31, 2007. In both applications, the claimant alleged disability beginning March 30, 2003 due to neck and back problems, brain injury, deafness in the left ear, vision problems, broken hip and pelvis, broken knee cap and right lower leg, wrist and finger problems, dental problem, mental illness and memory problem. The claims were denied initially on July 27, 2007, and upon reconsideration on November 14, 2007. Thereafter, the claimant filed a timely written request for hearing on December 31, 2007 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant and Donna Pruitt, the claimant's friend, appeared and testified at a hearing held on August 20, 2008, in Palmdale, CA. Alan E. Cummings, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Daniel Keenan, an attorney.

The claimant filed prior Titles II and XVI applications on October 30, 2003, with an alleged onset date of October 23, 2003, which were denied at the initial level on January 5, 2004 and at the reconsideration level on September 7, 2004. There is no basis to reopen the determinations on the prior applications. The undersigned has considered the laws and regulations governing the issue of reopening, and Social Security Ruling 91-5p, in making my determination. Any discussion of evidence pertaining to the period covered by the determinations on the previous applications is for informational purposes only and is not intended to be construed as a reopening of the determinations on the previous applications nor is it intended to be construed as a re-adjudication of the merits of the prior claim.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 2006. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from March 30, 2003 through the date of this decision.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and



**32**

Martin Vincent Davis <span style="background:black">████████</span>                                   Page 2 of 8

416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR. 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

**33**

See Next Page

Martin Vincent Davis (███████████)                                    Page 3 of 8

EXHIBIT NO. 5A
PAGE: 5 OF 10

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant met the insured status requirements of the Social Security Act through March 31, 2006.**

**2.   The claimant has not engaged in substantial gainful activity since March 30, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

**3.   The claimant has the following severe impairments: status post fall injury with cervical spine surgery and depression (20 CFR 404.1520(c) and 416.920(c)).**

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The undersigned has considered all of the medical Listings relevant to the claimant's severe impairments, but the undersigned does not find (as fully discussed below) that the claimant's impairments, either singly or in combination, meets or equals any of the medical Listing or combination of medical Listings.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, occasional climbing, balancing, stooping, kneeling, crouching and crawling, and mild-to-moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, socially interacting with the general public and adapting to workplace changes.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The medical evidence of record shows that the claimant fell 30 feet down a cliff on October 23, 2003 in association with drinking alcohol. He was hospitalized with a Glasgow Coma Scale of 14 and definite C6 quadriparesis. An MRI showed an acute C6-7 disc herniation. The claimant underwent C6-7 discectomy and fusion. He also sustained a left pelvic fracture, right wrist non-displaced distal radius fracture and right tibial plateau fracture that were treated non-operatively. The claimant admitted to daily alcohol consumption and use of marijuana. The claimant was discharged from the hospital on October 28, 2003 (Exhibit 1F).

**34**

See Next Page

EXHIBIT NO. 5A
PAGE: 6 OF 10

Martin Vincent Davis (███████)                                    Page 4 of 8

The claimant presented to the orthopedic clinic at High Desert Hospital on November 7, 2003 for a follow up of the right wrist and right knee.  The doctor noted that he was walking with no assistive device with full weight-bearing on the right leg.  X-rays showed a chip fracture of the triquetrum of the right wrist and tibial plateau fracture of the right knee.  The claimant was told to continue using a brace for the right wrist and use a right leg immobilizer (Exhibit 2F/9, 20).  Progress notes from a follow up on December 9, 2004 states that the claimant was last seen in November 2003.  He complained of right knee pain and neck pain.  The doctor noted that he does not want an MRI of the right knee or spine.  The doctor also noted that the claimant is a chronic smoker with chronic obstructive pulmonary disease (Exhibit 2F/5).  The claimant's next follow up was on September 21, 2005.  The doctor noted that he has not been seen since December 2004.  He complained of neck and upper and lower back pain.  The claimant admitted to smoking one pack per day and drinking one pint of Vodka every other day.  The physical examination showed minimal tenderness of the neck and no edema or tenderness of the extremities.  The doctor's impression was chronic alcohol abuse.  The claimant refused alcohol rehabilitation.  He was advised to quit smoking.  The claimant was given pain medications (Exhibit 2F/3).

The claimant attended a psychological consultative examination on June 26, 2007 at the request of the Disability Determination Services.  The claimant alleged that he cannot stand or sit for long periods and cannot walk long distances.  He said he also suffers from hypertension and heart problems.  The doctor noted that his primary claim is physical.  No mental complaints were indicated.  The doctor remarked that the claimant was sarcastic and mildly negativistic, and somewhat dismissive of examination procedures from the outset.  The claimant stated that he is taking "anything I can take for pain."  The doctor remarked that he is apparently not actively under a doctor's care.  The claimant admitted to drinking alcohol and smoking 4 packs of cigarettes daily.  He said he is "avoidant" with family, relatives, neighbors and others.  He stated that he sits on the couch and watches television all day.  The mental status examination was within normal limits except for the claimant's sarcastic and defensive mood and affect and his endorsement of feeling anxious and depressed.  The doctor noted that the claimant recalled only 3 digits forward and 2 digits backward, while his capability is thought to be stronger.  The doctor also noted that the claimant did not respond fully with memory testing attempts, and his efforts rose only to deficient levels.  The doctor stated that the claimant did surprisingly well on the Test of Malingered Memory, missing 1 of 50 pictures, which is "inconsistent with equivocal motivation levels noted by this examiner through the balance of today's evaluation."  The claimant's IQ scores were 68 verbal, 63 performance and 63 full scale, which was in the mildly deficient range of intellectual functioning.  The claimant's performance on the Trials A and Trials B were quite variable and from the average-to-deficient range.  The claimant's performance on the Wechsler Memory Scale-III was in the mildly deficient range for auditory memory and in the borderline range for working memory.  The claimant's Bender-Gestalt was in the borderline range.  The doctor diagnosed the claimant with depressive disorder, not otherwise specified (NOS), alcohol abuse/dependence, estimated continuing, borderline intellectual functioning (by history and presentation with somewhat "more challenged testing effort seen"), and cluster B personality traits.  The doctor opined that the claimant is capable of simple and repetitive vocational skills and adapt to minimal changes in a work environment, he could remember and comply with simple one and two part instructions, he could concentrate adequately for a regular work schedule for a full workweek, and he would have moderate-to-greater difficulty working effectively with others (Exhibit 3F).

The Disability Determination Services psychiatric consultant at the initial level on July 27, 2007 found no medically determinable mental impairment (Exhibit 7F).

The Disability Determination Services psychiatric consultant at the reconsideration level on November 14, 2007 assessed the claimant with the mental residual functional capacity to understand, remember and follow simple instructions and carry out simple work-related tasks, sustain adequate concentration, persistence and pace, relate and maintain appropriate workplace social interaction with reduced contact as needed, and adapt to normal workplace changes in routine (Exhibit 10F).

The claimant presented to the emergency room on July 3, 2007 after reportedly being thrown to the ground by his mother's sister's husband in an altercation.  The claimant had bilateral lower leg numbness and inability to move his legs.  He admitted to alcohol and marijuana abuse (Exhibit 4F/5), and was diagnosed with alcohol intoxication (Exhibit 15F/4).  An MRI of the thoracic spine revealed compression fractures of T7 and T8 but with no significant abnormal increased signal (Exhibit 4F/20).  A CT of the brain was negative (Exhibit 4F/18).  X-rays of the lumbar spine were negative (Exhibit 4F/14).  The doctor noted at discharge on July 5, 2007 that the claimant had loss of

**35**

Martin Vincent Davis ████████████                          Page 5 of 8

lower extremity function for about 2-1/2 hours with return of spontaneous function. The doctor also noted that the claimant's MRI showed no evidence of spinal cord contusion or trauma. The claimant was discharged with a trunk brace (Exhibit 4F/24).

The claimant attended an internal medicine consultative examination on July 9, 2007 at the request of the Disability Determination Services. The claimant reported chronic pain in the neck with decreased range of motion. He stated that he lives with his 70-year old mother and he cooks, cleans and waters the lawns for her. He said he smokes marijuana to relieve his back pain. He also reported using Vicodin. The claimant stated that he drives but does not have a license because it was taken away from him. The doctor noted that, interestingly, the claimant had very limited range of motion of the neck during the examination, but during the process of putting on the plastic brace on his torso, his neck appeared to have a better range of motion than was previously observed. The doctor also noted that, interestingly, the claimant was observed getting into his truck, he ambulated at ease on his own volition while in the parking lot, he took off his back brace without any deficits and flung it into the bed of his truck, and he got into the driver's seat drove away without any deficits and drove away without any deficits. The doctor further noted that while the claimant was in the truck he was found to bend at the neck and to light up his cigarette, and afterwards was able to hold up his head and drive away. The claimant had a wide-based gait with a slight limp. He did not use an assistive device for ambulation. The claimant had 4/5 motor strength throughout, including grip strength, although the doctor suspected poor effort. The claimant had normal reflexes. The doctor concluded that "there appears to be a component of poor effort and symptom embellishment," and there were no long track signs and no radiculopathy on examination. The doctor assessed the claimant with the residual functional capacity to lift and carry 20-25 pounds occasionally and 10-15 pounds frequently, sit, stand and walk without limitations, and occasional bending, stooping and crouching (Exhibit 5F).

The claimant presented to urgent care on August 27, 2007 with complaint of increased hip pain and inability to walk a block. He reported using "street" Vicodin. The claimant requested pain medications. He stated he has had no medication treatment for two years. He also reported anger management problems. He claimed he has pain all over his body. He admitted to buying illegal drugs to "treat." He also admitted to smoking 2 packs of cigarettes per day, drinking ½ a pint of alcohol daily and using marijuana. The physical examination was unremarkable. The claimant was given a psychiatric referral (Exhibit 12F/4). The claimant stated on October 12, 2005 that he "missed" his appointment (Exhibit 12F/2).

The claimant was seen for a psychological evaluation at High Desert Hospital on November 5, 2007. The claimant reported periodic temper outbursts. The claimant indicated that he takes care of his 70-year old mother 24 hours a day. The claimant denied any prescribed medications and stated that he takes his mother's Vicodin. The mental status examination showed the claimant had fair insight and judgment, his memory appeared intact, his mood was mixed, his affect was within normal limits he denied any history of suicidal ideation, and no psychotic symptoms were noted. The claimant admitted to regular substance abuse (daily marijuana, cigarette and alcohol use). He was diagnosed with mood disorder, not otherwise specified (NOS), alcohol abuse, cannabis abuse, and nicotine abuse. The claimant was given substance treatment referral (Exhibit 16F/7).

The claimant had dysphagia and was found to have a hiatal hernia on February 14, 2008 (Exhibit 16F/2).

The claimant was seen for a follow up and medication refill on April 17, 2008. The claimant admitted to smoking cigarettes and drinking alcohol (Exhibit 17F/15-18). A chest x-ray was normal (Exhibit 17F/13).

The claimant was seen in urgent care on May 20, 2008 for having suicidal ideas and threatening to kill himself (Exhibit 17F/10).

Thus, the record shows that the claimant had C6-7 discectomy and fusion in October 2003 secondary to falling down a cliff. The claimant has continued to complain of neck and back pain, but the treatment record since the injury do not show any significant abnormalities of the cervical spine. A CT of the cervical spine in July 2007 showed no abnormalities of the fusion hardware or spinal cord contusion or trauma. It is difficult to accurately evaluate the severity of the claimant's alleged cervical spine impairment as he gave poor effort at the internal consultative examination with indication of symptom embellishment. In this regard, the internist consultative examiner noted that the claimant demonstrated greater functional capabilities when he was not actively observed. The claimant admits that he drives despite a revoked driver's license and he was observed by the internist consultative examiner as driving away in a truck without difficulty and ambulating with ease in the parking lot. He also cares for his

Martin Vincent Davis ▮▮▮▮▮▮▮▮                                    Page 6 of 8

disabled 70-year old mother and told the internist consultative examiner that he cooks, cleans and waters the lawns for her. The claimant had decreased 4/5 motor strength throughout at the internal consultative examination, but the doctor suspected poor effort. The claimant also sustained a left pelvic fracture, right wrist fracture and right tibial plateau fracture from the fall in October 2003, but they were treated non-surgically with no evidence that fractures lasted, or resulted in functional impairment, lasting for least 12 months. Indeed, the claimant demonstrated at a follow up in November 2003 that he was walking with no assistive device with full weight-bearing on the right leg. The claimant has a brief (2-1/2 hours) loss of lower extremity function in July 2007 after reportedly being thrown to the ground, but his lower extremity function returned by the time of discharge from the hospital a couple of days later. He had a thoracic spine MRI that showed compression fractures of T7 and T9, but the age of the compression fractures were unknown and there were no signal abnormalities of the thoracic spine or other abnormalities. The records since July 2007 do not show complaints of the lower extremities or objective abnormalities of the lower extremities. The claimant has a hiatal hernia that may be related to his complaint of dysphagia, but there is no evidence that this results in any functional limitations lasting for any 12 month period. The claimant is a chronic tobacco abuser and has chronic obstructive pulmonary disease, but there is no evidence of pulmonary complaints of objective pulmonary impairment.

Accordingly, the undersigned gives weight to the assessment from the internist consultative examiner and finds that the claimant has the physical residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and occasional climbing, balancing, stooping, kneeling, crouching and crawling.

With regard to the claimant's subjective mental complaints, the claimant had IQ scores that were in the 60's at the psychological consultative evaluation. That brings medical Listing 12.05 into play. However, there is no evidence of onset of mental retardation before age 22[1]. The undersigned has also considered Listings 12.02 and 11.18, but there is no evidence of dysfunction of the brain from the accident in October 2003. Further, the validity of the IQ scores are highly questionable because the psychological consultative examiner believed that the claimant's effort on the psychological testing was questionable, as reflected by his statement that the claimant had "equivocal motivation levels." The claimant's effort on memory testing on the mental status examination was also poor. The credibility of the claimant's subjective complaints and alleged limitations is further eroded by the observations from the internist consultative examiner regarding his functional abilities when he was not actively observed during examination, and how they were inconsistent with the results on examination. The internist consultative examiner also suspected poor effort.

The claimant has not had ongoing mental health treatment or substance abuse treatment. In fact, there is no evidence of mental health workup until November 5, 2007. The claimant reported periodic temper outbursts, but the records do not show problems anger management problems or difficulty with social interaction. The mental status examination was essentially within normal limits.

Accordingly, the undersigned gives weight to the assessments from the psychological consultative examiner and Disability Determination Services psychiatric consultant at the reconsideration level, and finds that the claimant has mild-to-moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, socially interacting with the general public and adapting to workplace changes. The undersigned concludes that the claimant has mild restriction of activities of daily living; mild-to-moderate difficulties with social functioning; mild-to-moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. There is no evidence of severe disuse muscle atrophy that would be compatible with the claimant's alleged inactivity and inability to function.

---

[1] The claimant testified that he was not in special education classes.

See Next Page

Martin Vincent Davis ████████████                                Page 7 of 8

The claimant's subjective complaints and alleged limitations are not consistent with his treatment.  The claimant has not had regular and ongoing treatment for his alleged problems.  He claims he uses a cane (Exhibit 4E), but the record shows that on multiple occasions he has been able to ambulate without use of an assistive device.  There is also no evidence that the claimant was prescribed an assistive device for ambulation by a doctor.  There are significant gaps in his treatment for the period from October 2003 to the present.  There is no evidence of physical therapy, pain management or other treatment for the claimant's alleged physical problems.  The claimant admits to using "street" Vicodin and Vicodin from his mother.  He claims he smokes marijuana for pain, but there is no evidence that he was prescribed medical marijuana by a doctor and the record does not show that he is allergic to or has adverse side effects from every medication or therapy that could reasonably treat his alleged symptoms.  The record shows ongoing drug, tobacco and alcohol abuse since the alleged onset date with no evidence of substance abuse treatment despite referrals by his doctors.[2]  The claimant also has not had ongoing mental health treatment since the initial psychological evaluation in November 2007.  It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, he would have received more aggressive treatment.

Both the internist and psychological consultative examiners believed that the claimant was putting forth poor effort.  The internist consultative examiner also believed that he was embellishing his symptoms and provided detailed examples to support his claim.  That seriously erodes the credibility of the claimant's subjective complaints and alleged limitations.

The claimant's subjective complaints and alleged limitations are not consistent with his activities of daily living.  As noted above, the claimant drives and cares for his disabled 70-year old mother, including cooking, cleaning and watering the lawns for her.

The undersigned has considered the testimony from the claimant's friend/witness, Ms. Pruitt, but the undersigned does not find any additional limitations based on her allegations because they are not consistent with the objective findings, the claimant's treatment, the claimant's activities of daily living, and the general lack of credibility of his subjective complaints and alleged limitations, as discussed above.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as furniture mover, very heavy, semi-skilled.  Accordingly, the claimant is unable to perform past relevant work.

**7.   The claimant was born on November 24, 1962 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a

---

[2] .  The claimant did testify that he has been in detox since August 2008.

Martin Vincent Davis ▓▓▓▓▓▓▓▓                                    Page 8 of 8

conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light, unskilled occupations such as packager, with 12,000 locally and 211,000 nationally; assembler, with 3,100 locally and 103,000 nationally; and inspector, with 5,000 locally and 143,000 nationally; as well as the representative sedentary, unskilled occupations such as sorter, with 1,500 locally and 80,000 nationally; inspector, with 2,000 locally and 100,000 nationally; and assembler, with 3,000 locally and 150,000 nationally.
Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on May 31, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on May 31, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Edward C. Graham*

Edward C. Graham
Administrative Law Judge

September 8, 2008
Date